IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

**RONALD CHAPPELL,**                        Case No. 4:15 CV 882

        Petitioner,                        Judge Christopher A. Boyko

        v.                                 Magistrate Judge James R. Knepp, II

**DONALD MORGAN, Warden,**

        Respondent.                        REPORT AND RECOMMENDATION

## INTRODUCTION

*Pro se* Petitioner Ronald Chappell ("Petitioner"), a prisoner in state custody, filed a petition seeking a writ of habeas corpus under 28 U.S.C. § 2254 ("Petition"), and later amended that petition ("Amended Petition"). (Docs. 1, 7). Respondent Warden Ron Erdos[1] ("Respondent") filed a Return of Writ (Doc. 36) with attached exhibits (Docs. 36-1, 36-2), and Petitioner filed a Response (Doc. 44), which he later amended (Doc. 53). The district court has jurisdiction under § 2254(a). This matter has been referred to the undersigned for a Report and Recommendation pursuant to Local Rule 72.2(b)(2). (Doc. 22). For the reasons discussed below, the undersigned recommends the petition be denied.

## FACTUAL BACKGROUND

Factual findings of state courts of appeals are presumed correct unless a petitioner rebuts them with clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Moore v. Mitchell*, 708 F.3d 760, 775 (6th Cir. 2013). This presumption of correctness applies to factual findings of the court of appeals based on the state trial court record. *Mitzel v. Tate*, 267 F.3d 524, 530 (6th Cir. 2001).

---

1. Respondent represents that Ron Erdos, not Donald Morgan, is the Warden of the Southern Ohio Correctional Facility in Lucasville, Ohio where Petitioner is imprisoned.

The Seventh District Court of Appeals, Mahoning County, Ohio, made the following findings of fact:

{¶ 2} On February 2, 2012, Appellant was indicted on one count of domestic violence, four counts of harassment with a bodily substance, and one count of vandalism. The indictment stems from a domestic disturbance on January 22, 2012, at the home of Appellant's mother. Two police officers were called to the scene, and Appellant was arrested and placed in a police cruiser. While being driven to the police station, Appellant defecated into his own hand and spread feces all over the back of the police cruiser. He threatened to spit on the officers and to throw feces at them when they opened the door. After they arrived at the police station, sheriff's deputies were called to escort him from the vehicle and prepare him for intake. He was taken to a shower and then placed in a holding cell. As the deputies left the cell, Appellant defecated into his hand again and threw the feces at them, hitting two of them and narrowly missing one. Appellant was subsequently charged with vandalism of the police cruiser, domestic violence toward his mother, and four counts of harassment with a bodily substance directed toward one City of Youngstown police officer and three Mahoning County Sheriff's deputies.

{¶ 3} Jury trial began on October 15, 2012. Appellant was convicted on October 18, 2012, of four counts of harassment with a bodily substance and one count of vandalism, all fifth degree felonies subject to a maximum prison term of twelve months each. Sentencing occurred on October 19, 2012. The record indicates that Appellant has a long record of misdemeanor convictions, including a prior domestic violence conviction and a juvenile delinquency adjudication for felony domestic violence. The court sentenced Appellant to one year in prison on each count, to be served consecutively, for a total prison term of five years. This timely appeal followed. Appellant's counsel filed a no merit brief, and Appellant supplemented the record with seven possible *pro se* issues for appeal.

(Ex. 37, Doc. 36-1, at 127-28); *State v. Chappell*, 2014 WL 4402021, at *1 (Ohio Ct. App. Sept. 3, 2014).

**PROCEDURAL BACKGROUND**

*State Court Conviction*

On February 2, 2012, a Mahoning County Grand Jury indicted Petitioner on one count of domestic violence in violation of Ohio Revised Code § 2919.25(A)(D) (Count 1); four counts of harassment with a bodily substance in violation of Revised Code § 2921.38(B)(D) (Counts 2, 4-6); and one count of vandalism in violation of Revised Code § 2909.05(B)(1)(b)(E) (Count 3).

(Ex. 1, Doc. 36-1, at 8-10). Petitioner pleaded not guilty to the charges and the court appointed him counsel. (Ex. 2, Doc. 36-1, at 11). The state later filed a bill of particulars in response to Petitioner's request. (Ex. 3, Doc. 36-1, at 12-15).

On March 12, 2012, Petitioner filed a *pro se* motion to dismiss all charges arguing he was never: 1) given a preliminary hearing in Youngstown Municipal Court on Count 1; 2) arraigned or given a preliminary hearing on Counts 2 and 3; and 3) arraigned on Counts 4 through 6. (Ex. 4, Doc. 36-1, at 16-17). On March 19, the court re-set Petitioner's trial for June 4, 2012, as the court was unavailable due to trying another case. (Ex. 5, Doc. 36-1, at 18).

Petitioner filed three identical motions to remove counsel on May 16, May 22, and June 4, 2012, stating in support that he was "seeking the fair, impartial, speedy, and sure administration of justice, and the elimination of unjustifiable delay." (Ex. 6-8, Doc. 36-1, at 19-24). The court overruled the motions after argument on June 4, 2012. (Ex. 9, Doc. 36-1, at 25). Petitioner filed an additional motion to remove counsel contending he was being held on a charge that had been dismissed by the municipal court and had not timely been brought to trial. (Ex. 10, Doc. 36-1, at 26-27).

On June 7, 2012, Petitioner's counsel moved for—and the court granted—a continuance of the trial date so a civil protection order hearing relevant to the case could be transcribed. (Exs. 11-13, Doc. 36-1, at 28-32). Petitioner's counsel also moved for a competency evaluation (Ex. 14, Doc. 36-1, at 33), which the court granted (Exs. 15-16, Doc. 36-1, at 34-35). On August 15, 2012, after receipt of the forensic report declaring Petitioner competent, the parties stipulated to competency, and the trial was reset for October 9, 2012. (Ex. 17, Doc. 36-1, at 36).

On June 22, 2012, Petitioner filed a *pro se* motion to dismiss asserting he was not timely brought to trial under Ohio law. (Ex. 18, Doc. 36-1, at 37-38). The court later found Petitioner's

speedy trial time tolled by motions filed on his behalf. (Ex. 22, Doc. 36-1, at 46). Petitioner also moved the court to hold a pretrial conference on the same grounds cited in his last motion to remove counsel. (Ex. 19, Doc. 36-1, at 39-40).

The state moved for a material witness warrant for Petitioner's mother, Mary Chappell (Ex. 20, Doc. 36-1, at 41-44), which the court granted (Ex. 21, Doc. 36-1, at 45). The court also granted the state's motion to continue the jury trial due to the availability of a material witness. (Ex. 22, Doc. 36-1, at 46). The jury trial was reset to October 15, 2012, and the court found Petitioner's speedy trial rights tolled by motions filed on his behalf. *Id.*

Before trial, Petitioner, through counsel, filed a motion to dismiss Count 1, arguing the court lacked jurisdiction to adjudicate the charge, since it was predicated on a prior domestic violence conviction based on a no contest plea. (Ex. 23, Doc. 36-1, 47-51). The state opposed. (Ex. 24, Doc. 36-1, at 52-60).

The case proceeded to trial on October 15, 2012. (Ex. 25, Doc. 36-1, at 61). Witness Mary Chappell failed to appear and the court dismissed Count 1 for lack of evidence. *Id.* Petitioner took the stand and testified. (Tr. 371-403).[2] The court found him in contempt for repeatedly refusing to answer questions posed by the prosecutor. (Tr. 402). The jury found Petitioner guilty on the remaining charges, Counts 2 through 6. (Ex. 26, Doc. 36-1, at 63-67).

On October 19, 2012, the court sentenced Petitioner to one year in prison on each of Counts 2 through 6, to be served consecutively, for a total of five years. (Ex. 27, Doc. 36-1, at 68-69). The court appointed trial counsel to file a notice of appeal. *Id.* at 69. The court also sentenced Petitioner to 30 days for the court's contempt finding, to be served concurrent to the other sentences. (Ex. 28, Doc. 36-1, at 70).

---

2. *See* Doc. 65-1 (trial transcript).

4

*Direct Appeal*

Petitioner, through trial counsel, filed a notice of appeal with the Ohio Seventh District Court of Appeals. (Ex. 29, Doc. 36-1, at 71). New appointed appellate counsel filed a motion to withdraw from the case, citing *State v. Toney*, 23 Ohio App. 2d 203, 262 (1970), Ohio's version of *Anders v. California*, 386 U.S 738 (1967). (Ex. 30, Doc. 36-1, at 72). Counsel's brief alleged a single possible assignment of error: "In sentencing the Defendant-Appellant to five one-year prison terms, to be served consecutively, did the court clearly and convincingly comply with applicable sentencing laws and was the sentencing imposed an abuse of discretion." *Id.* at 75. It then explained that the trial court did not commit prejudicial error, and any appeal of the verdict or sentence would be frivolous. *Id.* at 84.

The appellate court allowed Petitioner the opportunity to raise any claims of error. (Ex. 31, Doc. 36-1, at 85). Petitioner filed a motion to remove counsel and have new counsel appointed (Ex. 32, Doc. 36-1, at 87), which the court denied (Ex. 33, Doc. 36-1, at 88). Petitioner then filed a brief alleging seven claims of error:

1. Not dismissing charges as I requested in my motion to dismiss charges filed on 3-12-12. Crim R. 12(C)(1) say deficiencies and objections based on the institution of the prosecution must be raised before trial. I raised my deficiencies and objections in my motion to dismiss charges filed on 3-13-12 because I was not arraigned on the charges or given a preliminary hearing both of which I have a right to. Crim. R. 12(F) say a motion made pursuant to division (C)(1) must be determined before trial and the court never determined my motion. In *Hansen v. State*, 43 Ohio St 376 . . . the Supreme Court held "the record of a conviction for [illegible] must show that a defendant was arraigned on the indictment." Crim. R. 22 say all hearings are recorded. In my motion to dismiss charges I told the court to check the record in the interest of fair, impartial justice for all. Passing me through the legal process, trying, convicting, and sentencing me for charges I wasn't arraigned on or given a preliminary hearing for violated by rights to due process, and equal protection of the laws which are protected by the 5th and 14th amendments of the U.S. Constitution.

5

2. Letting me stand trial for a charge that was dismissed at a scheduled preliminary hearing on 3-14-12 by Judge Kobly in the YMC Court. Count 2 indictment 2921.38(B)(D) was dismissed. A review of the YMC docket will show this passing me through the legal process, trying, convicting, and sentencing me for a charge that was dismissed violated my due process and equal protection rights that are protected by the 5th and 14th amendments of the U.S. Constitution.

3. Not removing ineffective assistance of counsel as I requested in my motions to remove counsel filed on 5-16-12, 6-4-12, and 6-18-12 according to the court docket. Counsel performance was deficient of what is required by law and his deficient performance prejudiced my defense and deprived me of my right to a fair trial. First, counsel allowed me to go through the court process, remain held on bond, and stand trial for charges that were dismissed by Judge Kobly at a scheduled preliminary hearing on 3-14-12. Second, Counsel did not get my permission to take the type of defense he took. I asked him to take another defense to the charges (self defense) and I produced documents that I asked him to have admitted into evidence to support my defense. I wanted to take and prove my intentions were not criminal but he refused to do these things for me. These are violations of due process, effective assistance of counsel, and equal protection of the laws which are my rights that are protected by the 5th, 6th, and 14th amendments of the U.S. Constitution.

4. Not discharging me for delay in trial when I filed my motion on 6-22-12 according to the court docket, as required by § 2945.73 of the O.R.C. and the 5th, 6th, and 14th amendments of the U.S. Constitution. The court violated my rights to due process, fair trial, speedy trial, and equal protection of the laws which are protected by the 5th, 6th, and 14th amendments of the U.S. Constitution.

5. Court erred in not dismissing Count 3 indictment 2909.05(B)(1)(b)(e) after closing arguments because state did not meet burden of proof and prove every element of offense beyond reasonable doubt nor did state produce any credible evidence to support accusation and prove crime occurred. Off. Fulmer charged me with agg. Menacing 2903.21. 2903.21 say I had to knowingly cause Off. Fulmer to believe that I would cause serious harm to him. When asked at trial if he thought I would cause serious harm to him he said "No." His testimony is not credible and it is apparent he was making up charge to lock me up. This is a violation of my due process right to have fair trial, my right to have state meet burden of proof and prove every element of the offense, and my right to equal protection of the laws which are protected by the 5th and 14th amendments of the U.S. Constitution.

6. Court erred in not dismissing Count 6 indictment because state did not meet burden of proof and prove every element of offense. Nothing in statement, element, or testimony support the charge. Violation of my due process, fair

trial, and my right to have state prove every element of offense beyond reasonable doubt, equal protection of the laws which are protected by the 5th and 14th amendments of the U.S. Constitution.

7.  Court erred in not letting me represent self which is my 6th amendment right, *Faretta v. Cal.*, 422 U.S. 806 (1975). The omissions and conduct I brought to the court attention make it apparent that I did not have effective assistance of counsel and my counsel conduct jeopardized my right to fair trial. Also at preliminary hearings I made it clear to the court that my counsel and me were not on the same page and he was hijacking my trial and doing stuff without my permission. His actions prejudiced my defense and prevented me from receiving a fair trial which violated my right to fair trial, due process, effective assistance of counsel, and equal protection of the laws which are protected by the 5th, 6th, and 14th amendments of the U.S. Constitution.

(Ex. 34, Doc. 36-1, at 89-93). The state filed a response to counsel's brief (Ex. 35, Doc. 36-1, at 94-105), and a supplement in response to Petitioner's *pro se* brief (Ex. 36, Doc. 36-1, at 106-25). On September 13, 2014, the appellate court granted counsel's motion to withdraw (Ex. 38, Doc. 36-1, at 137), rejected Petitioner's *pro se* assignments of error, and affirmed the judgment of the trial court (Ex. 37, Doc. 36-1, at 126-36). Petitioner moved the court to appoint counsel to assist with the filing of a motion to reopen his appeal (Ex. 39, Doc. 36-1, at 138-39), which the court denied (Ex. 40, Doc. 36-1, at 140).

On September 29, 2014, Petitioner filed a *pro se* notice of appeal with the Ohio Supreme Court. (Ex. 41, Doc. 36-1, at 141-42).[3] Petitioner also filed a *pro se* motion to stay the appellate court decision, arguing: 1) the appellate court misinterpreted his arguments and erred in upholding his conviction, and that this violated his due process, effective assistance of counsel, and equal protection rights; 2) his right to a speedy trial was violated by the trial court (citing

---

3. The Ohio Public Defender's Office was appointed to represent Petitioner in his appeal to the Ohio Supreme Court, but Petitioner filed an appeal himself and instructed counsel not to file for him. (Ex. 42, Doc. 36-1, at 143-44). On this basis, counsel moved the Ohio Court of Appeals for leave to withdraw as counsel, and filed an amicus memorandum in support of jurisdiction with the Ohio Supreme Court "because [Petitioner] has a strong case that his appeal was not frivolous and that he should have been provided a copy of his transcript." *Id.*; *see also* Ex. 48, Doc. 36-1, at 218-36 (counsel's amicus memorandum).

7

Ohio speedy trial statutes), and right to equal protection was violated on appeal; and 3) ineffective assistance of counsel on appeal, which violated his right to equal protection. (Ex. 44, Doc. 36-1, at 147-52).

Petitioner filed a memorandum in support of jurisdiction with the Ohio Supreme Court, setting forth the following propositions of law:

1. I was never arraigned on count 2-6. The court cites no legal authority to uphold the conviction. Arraignments are mandatory. ORC statute and Crim R. 10 both say arraignment is mandatory. Count 2 should've stayed in YMC court until after the scheduled prelim. hearing. The judge never sent it to grand jury. I never had a prelim hearing for it. No prelim hearing for count 2 and no prelim hearing or arraignment for count 206 is violation of due process and equal protection of laws and having me stand trial for a charge that was dismissed at a scheduled prelim. hearing makes the whole trial void. . . . I have a right to both arraignment and prelim. hearing for counts 2, and 2-6. Not overturning the conviction violates my rights to equal protection of the laws. [citing *State v. Magana*, 115 Ohio App. 106 (1961)]. This is why my conviction should have been overturned.

2. I was denied equal protection of the law by appeal court because my conviction was not overturned on speedy trial grounds. I was not brought to trial within the time period required by 2945.71 and 2945.72 of the ORC . . . .

3. Consecutive sentences for counts 2-3 and 4-6 are double jeopardy violations and are a cruel and unusual punishment and unconstitutional. If the court review the record and the reports they will see, assuming count 2-3 did happen for argument sake, that they fall under the allied offenses and merger doctrine pursuant to the Ohio Supreme Court test [citing *State v. Ware*, 63 Ohio St. 2d 84, 86 (1980)]. And count 4-6 also should've merged pursuant to the same legal authorities. . .

4. The appeal court erred in saying the record contains no evidence that I asserted my right to self representation. If the transcripts are checked I told the court a lot of times that I wanted to represent myself and even argued it with the court by oral motion directly before trial commenced . . . . I clearly and unequivocally asserted my right to self representation before trial but the court didn't let me represent myself. It is all in the transcripts.

5. I had ineffective assistance of counsel on appeal. I have letters from my appeal counsel telling me he cannot and will not listen to anything I have to say. . . . This is the same thing that happened to me in the trial court. . . . I also filed a motion asking the court to order my attorney to give me the transcripts and other stuff associated with the case . . . but the court overruled that motion also. My appeal counsel didn't allow me to access the transcripts and a lot of the evidence

supporting my claims of error are in the transcripts. . . . He didn't do anything I asked him to do and he hindered me from assisting myself by withholding the transcripts and other evidence from me and by filing stuff without my permission.

6. There is no evidence to support the findings that my actions were criminal and not self defense. If I had effective assistance of counsel to argue . . . self defense. If this court say I have no right to self defense this court will be denying me an inalienable right and will be saying I am not a citizen of the US or Ohio . . . .

7. I had ineffective assistance of counsel at trial. My counsel was ineffective because he didn't take the defense I asked him to which was self defense and he didn't have evidence admitted to support my defense like I asked him to. . . . And my counsel allowed me to be convicted on a charge that was dismissed at a scheduled prelim. hearing on 3-14-12.

8. The court erred in convicting me and sentencing me for a charge that was dismissed at a scheduled prelim. hearing on 3-14-12. . . . I was never reindicted and the court continued the proceedings against me. It is count 2 indictment.

(Ex. 45, Doc. 36-1, at 165-79). The state waived a response. (Ex. 46, Doc. 36-1, at 194).

Petitioner then filed a revised memorandum in support of jurisdiction setting forth the following propositions of law, many of which overlapped with Petitioner's original propositions of law:

1. The trial judge erred with consecutive sentences for 2-3 and 4-6 count indictments. . . . [overlaps with prior proposition of law 3 in Ex. 45]

2. Count 2 was dismissed at a schedule prelim. Hearing and the sentence for it is void. [overlaps with prior proposition of law 8 in Ex. 45]

3. I never heard of a court being allowed to change claim of errors to file its opinion, No legal authority gives a court authority to do this. This is major constitutional violations.

4. I had ineffective assistance of counsel on appeal . . . . [overlaps with prior proposition of law 5 in Ex. 45].

5. I was never given an arraignment or prelim. Hearing for counts 2-6 [overlaps with prior proposition of law 1 in Ex. 45].

6. My right to speedy trial was violated at trial and appeal court denied me equal protection of laws on appeal by not overturning conviction. . . . [overlaps with prior proposition of law 2 in Ex. 45].

9

7. The appeals court denied me my constitutional right to counsel and equal protection of the laws on appeal pursuant to *Griffin v. Illinois*, [351 U.S. 12 (1956) and *Douglas v. California*, [372 U.S. 353 (1963)]. I have a constitutional right to counsel on direct appeal. I filed a motion to remove counsel and have new counsel appointed because my counsel was not helping me or advocating my cause but the appeal court overruled my motion. I was left without counsel to help me effectively communicate my claims of error to the court. My counsel filed a no merit brief and motion to withdraw but if you read this MISJ you will see my claims of error have merit and my sentences should've merged. Denying my motion for new counsel and having me file my claims of error without my transcripts and other stuff that was needed violated my right to counsel on appeal and equal protection of the laws. . . .

8. I had ineffective assistance of counsel at trial . . . [overlaps with prior proposition of law 7 in Ex. 45].

9. Trial court refused me my right to represent self. I have a right to represent self pursuant to *Faretta v. Cal[ifornia]*, 422 U.S. 806 (1975). . . . [overlaps with prior proposition of law 4 in Ex. 45].

10. I was denied counsel at trial. The appointed counsel did nothing to assist me the way I wanted to be assisted and I was not allowed to assist myself. I was told if I try to help myself I will be held in contempt. This is a violation of the 6th and 14th amend. of U.S. Const. It is all in the transcripts. The court and counsel were in cahoots.

(Ex. 47, Doc. 36-1, at 195-204). The Ohio Public Defender also filed an amicus curiae memorandum in support of jurisdiction setting forth the following propositions of law:

1. A court of appeals may not dismiss an appeal pursuant to *Anders v. California* without sending a copy of the transcript to the defendant-appellant.

2. A court of appeals may not dismiss an appeal pursuant to *Anders v. California* when the transcript is incomplete.

3. A court of appeals may not dismiss an appeal pursuant to *Anders v. California* when the record supports non-frivolous assignments of error.

(Ex. 48, Doc. 36-1, at 218-36). Petitioner also filed a revised motion to stay the appellate court's decision, stating he was being tortured, denied medical treatment, and that it was an emergency.

(Ex. 49, Doc. 36-1, at 237-42). On December 14, 2014, the Ohio Supreme Court declined to

accept jurisdiction of the appeal. (Ex. 50, Doc. 36-1, at 255). The Ohio Supreme Court also denied Petitioner's revised motion to stay. *Id.*

On February 11, 2015, Petitioner filed a *pro se* petition for writ of certiorari with the United States Supreme Court raising many of the same claims. (Ex. 51, Doc. 36-1, at 256-73). On May 18, 2015, the Supreme Court denied Petitioner's certiorari petition. (Ex. 52, Doc. 36-1, at 274).

*State Habeas*

Petitioner filed six state habeas petitions with the Ohio state courts and the Supreme Court of the United States. (Exs. 53-79, Docs. 36-1 & 36-2).

Petitioner filed his first habeas petition in the Richland County Court of Common Pleas on August 28, 2013 contending his imprisonment was illegal under Ohio and federal constitutional speedy trial rules. (Ex. 53, Doc. 36-1, at 275-78). The state responded (Ex. 54, Doc. 36-1, at 288-94), and the court dismissed, finding Petitioner had an adequate remedy at law, either by way of appeal, or post-conviction motion with the sentencing court (Ex. 55, Doc. 36-1, at 295-96). Petitioner appealed (Ex. 56, Doc. 36-1, at 297-300), but the case was dismissed for want of prosecution (Ex. 57, Doc. 36-1, at 301).

Petitioner filed his second habeas petition in the Richland County Court of Common Pleas on September 25, 2013, making the same arguments, but naming a different warden. (Ex. 58, Doc. 36-2, at 8-12). The state responded (Ex. 59, Doc. 36-2, at 24-29), and the case was dismissed (Ex. 89, Doc. 36-2, at 219).

Petitioner filed his third habeas petition in the Scioto County Court of Common Pleas on February 27, 2014, making the same arguments. (Ex. 60, Doc. 36-2, at 31-36). The state responded (Ex. 61, Doc. 36-2, at 51-55), and the court dismissed for failure to file a statement

setting forth the balance in his inmate account as required by Ohio Revised Code § 2969.25(C) (Ex. 62, Doc. 36-2, at 56-57). Petitioner appealed to the Ohio Supreme Court (Ex. 63, Doc. 36-2, at 58-66), and the state responded (Ex. 64, Doc. 36-2, at 67-75). The Ohio Supreme Court affirmed the lower court's decision dismissing for failure to file a statement of inmate account, and also noted that speedy trial issues are not cognizable in habeas corpus (Ex. 65-66, Doc. 36-2, at 77-79). The United States Supreme Court denied Petitioner's certiorari petition. (Ex. 67, Doc. 36-2, at 80).

On March 13, 2014, Petitioner filed his fourth habeas petition with the Ohio Supreme Court making the same speedy trial argument. (Ex. 68, Doc. 36-2, at 81-84).[4] The Ohio Supreme Court denied the petition *sua sponte*. (Ex. 70, Doc. 36-2, at 96). Petitioner filed a motion for reconsideration (Ex. 71, Doc. 36-2, at 97-99), which the court also denied (Ex. 72, Doc. 36-2, at 100). Petitioner also petitioned for a writ of certiorari with the Ohio Supreme Court. (Ex. 73, Doc. 36-2, at 101).

On April 24, 2014, Petitioner filed his fifth habeas petition with the Ohio Supreme Court, making the same speedy trial argument. (Ex. 74, Doc. 36-2, at 102-06). The Ohio Supreme Court dismissed *sua sponte*. (Ex. 75, Doc. 36-2, at 114).

On November 23, 2014, Petitioner filed his sixth habeas petition with the Scioto County Fourth District Court of Appeals, claiming he was denied a preliminary hearing. (Ex. 76, Doc. 36-2, at 115-18). The state moved to dismiss (Ex. 77, Doc. 36-2, at 133-45), and Petitioner responded (Ex. 78, Doc. 36-2, at 146-48). The court dismissed the petition, holding Petitioner had an adequate remedy at law through appeal, and because it was barred by *res judicata*. (Ex. 79, Doc. 36-2, at 149-53). The court also held Petitioner's claims were barred on the procedural

---

4. Petitioner also filed a motion to amend this petition to correct a date error. (Ex. 69, Doc. 36-2, at 95).

ground that Petitioner did not file his inmate account statement, *id.* at 152, and noted Petitioner

had raised this issue on direct appeal. *Id.* at 151.

### FEDERAL HABEAS CORPUS

In August 2014, Petitioner filed, *pro se*, a federal petition for writ of habeas corpus under

28 U.S.C. § 2254 in the Southern District of Ohio. (Ex. 80, Doc. 36-2, at 161-68). The case was

transferred to the Northern District of Ohio, where Petitioner requested a voluntary dismissal

because he was seeking counsel. (Ex. 81, Doc. 36-2, at 181); *Chappell v. Morgan*, Case No.

4:14-CV-1943 (N.D. Ohio). The court granted Petitioner's motion, dismissing without prejudice

to allow Petitioner to seek counsel and exhaust state remedies. (Ex. 82, Doc. 36-2, at 182-83).

Petitioner, again acting *pro se*, filed the instant habeas petition on April 29, 2015,[5]

challenging his judgment of conviction. (Doc. 1). He later filed an amended petition. (Doc. 7).

Petitioner alleges several claims for relief, which the Court summarizes below[6]:

> Ground 1(A): Petitioner was denied a preliminary hearing within the time period
> required by Ohio law. He filed a motion to dismiss on these grounds, on
> which the court never ruled. This violated Petitioner's right to due process,
> equal protection, and against cruel and unusual punishment.

> Ground 1(B): Petitioner was not arraigned on Counts 2-6 of the indictment. He filed a
> motion to dismiss on these grounds on which the court never ruled. This
> violated Petitioner's right to due process, equal protection, and against
> cruel and unusual punishment.

---

5. Under the prison mailbox rule, a *pro se* prisoner's habeas Petition is deemed filed when it is
handed over to prison officials for mailing to the court. *Houston v. Lack*, 487 U.S. 266, 270
(1988).

6. A *pro se* petitioner's pleadings are to be liberally construed. *Haines v. Kerner*, 404 U.S. 519,
520 (1972) (stating *pro se* complaints are held to "less stringent standards than formal pleadings
drafted by lawyers"); *see also Franklin v. Rose*, 765 F.2d 82, 85 (6th Cir. 1985); *Martin v.
Overton*, 391 F.3d 710, 712 (6th Cir. 2004) ("The allegations of a pro se habeas petition, though
vague and conclusory, are entitled to a liberal construction."). Petitioner here presents his
grounds in narrative form, which the Court summarizes rather than duplicating in their entirety.

Ground 1(C):  Petitioner was denied his speedy trial rights. He was not brought to trial within the 90 days as mandated by Ohio Revised Code § 2945.71(c)(2) and (E). The trial court denied Petitioner's motions on this ground. This violated his right to due process, speedy trial, and equal protection.

Ground 1(D):  Petitioner was tried on charges that were dismissed at a preliminary hearing in Youngstown Municipal Court. This violated Petitioner's right to due process, equal protection, speedy trial, and double jeopardy.

Ground 2(A):  There was "no credible evidence" on which to convict him on Counts 2, 3, and 6. This violated his rights to due process, right not to be subject to cruel and unusual punishment, and equal protection

Ground 2(B):  The trial court violated Petitioner's right to due process, equal protection, and his right against cruel and unusual punishment when it denied the claims he now raises in Grounds 1(A), 1(B), and 1(C).

Ground 3(A):  Petitioner's trial counsel was ineffective for not raising the claims Petitioner now raises in Grounds 1(A)-(D). Trial counsel was also ineffective because he did not raise self-defense as Petitioner requested, or ask for a self-defense jury instruction.

Ground 4(A):  The appellate court violated Petitioner's rights when it misrepresented and did not address his ineffective assistance of counsel claim. This violated Petitioner's right to due process, equal protection of the laws, and a fair trial.

Ground 4(B):  The appellate court violated his rights to due process, equal protection, and a fair trial when it denied the claim Petitioner now raises in Ground 1(A)—that the trial court did not hold a preliminary hearing.

Ground 4(C):  The appellate court violated Petitioner's rights to due process, equal protection, and a fair trial when it refused to acknowledge and rule on the claim he now raises in Ground 1(B)—that he was not arraigned.

Ground 4(D):  The appellate court violated Petitioner's rights to a fair trial, due process, and equal protection of the laws when it ruled that the trial court did not unconstitutionally deny his right to self-representation.

Ground 4(E):  The appellate court violated Petitioner's rights by not ruing that it was a due process and equal protection violation for charges to be submitted to a grand jury despite the municipal court not yet having dismissed the case against him. This relates to the claim Petitioner now makes in Ground 1(D).

14

> Ground 4(F): The appellate court violated Petitioner's due process and equal protection rights by ruling against him on his speedy trial claim. This is related to the claim Petitioner now brings in Ground 1(C).

> Ground 5(A): Petitioner was denied effective assistance of counsel on appeal because his counsel filed a no merit *Anders* brief stating there was no non-frivolous ground for appeal, and did not raise claims of error Petitioner requested.

> Ground 6: Petitioner was denied due process when the Ohio Supreme Court declined to exercise discretion over his appeal.

(Doc. 7). Respondent filed a Return of Writ, arguing the Petition should be denied because Petitioner's claims were either unexhausted, procedurally defaulted, or without merit. (Doc. 36). Petitioner filed a response (Doc. 44), and later an amended response (Doc. 53). In his amended response, Petitioner asks to "remove from consideration and the petitions grounds 2, 2a, 2b, 4, 4a, 4b, 4c, 4d, 4e, 4f, 5, 5a, and 6." (Doc. 53, at 8). In his amended response, Petitioner continues to argue the merits of grounds 1(A), 1(B), 1(C), 1(D), and 3(A). He also states that he raises "this following ground for relief as ground 7" and proceeds to argue his right to self-representation. *Id.* at 7. As the undersigned already ruled, Petitioner may not amend his petition to add additional grounds at this point. *See* Doc. 48 (denying Petitioner's motion for leave to amend petition and striking second amended petition from the record). However, this "new" ground Petitioner attempts to add—his right to self-representation—is the same as Ground 4(D) in his first amended Petition. *See* Doc. 7, at 17. Therefore, the undersigned will proceed to evaluate the remaining grounds in his Amended Petition: 1(A), 1(B), 1(C), 1(D), 3(A), and 4(D).

## STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "dictates a highly deferential standard for evaluating state-court rulings which demands that state court decisions be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005). An application for habeas corpus cannot be granted for a person in custody pursuant to a state

15

conviction unless the adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. § 2254(d). Thus, a court may grant habeas relief if the state court arrives at a conclusion that is contrary to a decision of the Supreme Court on a question of law, or if the state court decides a case differently than did the Supreme Court on a materially indistinguishable set of facts. *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

The appropriate measure of whether a state court decision unreasonably applied clearly established federal law is whether that state adjudication was "objectively unreasonable" and not merely erroneous or incorrect. *Williams*, 529 U.S. at 409–11; *see also Machacek v. Hofbauer*, 213 F.3d 947, 953 (6th Cir. 2000). "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). To obtain "habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

## DISCUSSION

### *Exhaustion & Procedural Default*

Petitioners must exhaust their state remedies prior to raising claims in federal habeas corpus proceedings. *See* 28 U.S.C. § 2254(b),(c). This requirement is satisfied when a Petitioner has given "the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the state's established appellate review process." *O'Sullivan v. Boerckel*,

526 U.S. 838, 842 (1999). Exhaustion requires a petitioner to "fairly present" federal claims so that state courts have a "full and fair opportunity" to apply controlling legal principles to the facts bearing upon a petitioner's constitutional claim. *See O'Sullivan*, 526 U.S. at 342; *Picard v. Connor*, 404 U.S. 270, 275-77 (1971). In order to satisfy the fair presentation requirement, a habeas petitioner must present both the factual and legal underpinnings of his claims to the state courts. *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). The claims must also be presented to the state courts as federal constitutional claims. *See Smith v. Morgan*, 371 F. App'x 575, 582 (6th Cir. 2010) ("The writ of habeas corpus is not available to remedy errors of only state law.") (citing 28 U.S.C. § 2254(a)); *see also Norris v. Schotten*, 146 F.3d 314 328 (6th Cir. 1998) ("A claim based solely on an error of state law is not redressable through the federal habeas process.") (quoting *Estelle v. McGuire*, 502 U.S. 52, 57-68 (1991)). This requirement is strictly followed in the Sixth Circuit and catch-all allegations, such as a defendant claiming he was denied his constitutional right to a fair trial, when supported only by state law, do not fairly apprise the state court of a specific constitutional theory. *Weaver v. Foltz,* 888 F.2d 1097, 1099 (6th Cir. 1989).

Federal courts will not consider the merits of procedurally defaulted claims, unless the petitioner demonstrates cause for the default and prejudice resulting therefrom, or where failure to review the claim would result in a fundamental miscarriage of justice. *See Lundgren v. Mitchell,* 440 F.3d 754, 763 (6th Cir. 2006) (*citing Wainwright v. Sykes,* 433 U.S. 72, 87 (1977)). First, a petitioner may procedurally default a claim by failing to comply with state procedural rules in presenting his claim to the appropriate state court. *Id.*; *see also Maupin v. Smith,* 785 F.2d 135, 138 (6th Cir. 1986). If, due to petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an

independent and adequate grounds for precluding relief, the claim is procedurally defaulted. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). Second, a petitioner may procedurally default a claim by failing to raise the claim in state court, and pursue that claim through the state's "ordinary appellate review procedures." *O'Sullivan*, 526 U.S. at 847.

*Ground 1(A): Not Afforded a Preliminary Hearing*

Petitioner argues in Ground 1(A) that he was not afforded a preliminary hearing within the time required by Ohio Revised Code §§ 2945.71 and 2945.73(A) and that the trial court should have dismissed the charges when he filed a motion to dismiss on these grounds. (Doc. 7, at 9). Respondent contends this ground should be dismissed as it raises a non-cognizable state-law claim. (Doc. 36, at 19, 39-41). In response, Petitioner continues to argue the merits of his claim under Ohio law, and claims the denial of the preliminary hearing violates his due process and equal protection rights. (Doc. 53, at 3). For the reasons discussed below, the undersigned agrees with Respondent and recommends Ground 1(A) be dismissed as non-cognizable.

There is no federal constitutional right to a preliminary hearing. *See Gerstein v. Pugh*, 420 U.S. 103, 123, 125 n.26 (1975); *Dillard v. Bomar*, 342 F.2d 789, 790 (6th Cir. 1965) ("We do not find that the Supreme Court has ever held that an accused has a constitutional right to a preliminary hearing."). Thus, Petitioner's argument that his constitutional rights were violated because he was not afforded a preliminary hearing must fail. *See Estelle*, 502 U.S. at 57-58 (state-law errors not cognizable in federal habeas). Thus, the undersigned recommends Ground 1(A) be dismissed as non-cognizable.

*Ground 1(B): Failure to Arraign*

Petitioner argues in Ground 1(B) that he was not arraigned on Counts 2 through 6 of the indictment in violation of Ohio Criminal Rule 10(A), violating his right to due process, equal

protection, and against cruel and unusual punishment. (Doc. 7, at 10-11). Respondent contends this claim is procedurally defaulted, or, in the alternative, is without merit. (Doc. 36, at 20, 45-46). Respondent argues it is difficult to tell if Petitioner fairly presented this claim to the state courts as a constitutional violation, and suggests that the most efficient manner for dismissing this claims is on the merits. *Id.* The undersigned agrees.[7]

The "want of formal arraignment" does not, standing alone, "deprive[] the accused of any substantial right, or in any ways change[] the course of the trial to his disadvantage." *Garland v. Washington*, 232 U.S. 642, 645 (1914). Thus, under *Garland*, "[a] failure to arraign warrants a reversal [or habeas relief] only if it causes prejudice or impairs a substantial right." *United States v. Williams*, 152 F.3d 294, 299 (4th Cir. 1998).

First, the record here reflects Petitioner was arraigned. *See* Ex. 83, Doc. 36-2, at 187 (noting arraignment held February 14, 2012 in case number 12-CR-111); Ex. 1, Doc 36-1, at 8-10 (indictment listing Counts 1-6 in case number 12-CR-111); Ex. 2, Doc. 36-1, at 11 (Magistrate's Order noting Petitioner entered a plea of not guilty and setting $100,000 bond in case number 12 CR 111). Second, even if he was not, Petitioner does not argue that he did not have adequate notice of the charges against him or that he was denied an opportunity to defend himself at trial. *See Garland*, 232 U.S. at 645. Rather, Petitioner cites Ohio Criminal Rule 10(A) (setting forth arraignment procedure) and argues the court violated Ohio Criminal Rule 12(F)

---

7. There is certainly an argument to be made that this ground is procedurally defaulted. On appeal, Petitioner argued this claim primarily on grounds of state law, but cited "due process" and "equal protection". (Ex. 34, Doc. 36-1, at 90). To the Ohio Supreme Court, he again argued arraignment was mandatory under state law, and "not overturning the conviction violates my rights to equal protection of the laws." (Ex. 45, Doc. 36-1, at 169). Merely using talismanic phrases such as "due process" and "equal protection" is not sufficient to raise a federal constitutional issue as necessary to "fairly present" a claim on direct appeal. *See Slaughter v. Parker*, 450 F.3d 224, 236 (6th Cir. 2006). Thus, this ground may well be defaulted.

(requiring, *inter alia*, a court to rule on motions made pursuant to 12(C)(1) to 12(C)(5) before trial) by not ruling on Petitioner's motion to dismiss the charges on these grounds. These are state-law arguments, not arguments that Petitioner was denied a federal constitutional right. *See Estelle*, 502 U.S. at 57-58 (state law arguments not cognizable in habeas). Thus, even if Petitioner could show he was not properly arraigned under state law, he has not shown he was denied his constitutional right to due process of law so as to warrant habeas relief. Accordingly, the undersigned recommends the Court deny this claim.

*Ground 1(C): Speedy Trial*

Petitioner argues in Ground 1(C) that he was denied his speedy trial right because he "was not brought to trial for Counts 2-6 . . . within 90 days as mandated by [Ohio Revised Code] 2945.71(c)(2) and (E)." (Doc. 7, at 11). He argues this ground primarily under state law, but ends the claim by stating that this action violated his due process, equal protection, and right against cruel and unusual punishment. *Id.* at 12. Respondent contends this claim is defaulted because Petitioner did not fairly present a constitutional speedy trial claim to the Ohio courts. (Doc. 36, at 17, 29-30). The undersigned agrees with Respondent.

Petitioner raised this claim with the appellate court, arguing the trial court erred in "[n]ot discharging [him] for delay in trial when [he] filed his motion on 6-22-12 . . . as required by § 2945.73 of the O.R.C. and the 5th, 6th, and 14th amendments of the U.S. Constitution." (Ex. 34, Doc. 36-1, at 91). In his revised memorandum in support of jurisdiction to the Ohio Supreme Court, Petitioner argued his speedy trial claim based on Ohio law. (Ex. 47, Doc. 36-1, at 199, 201, 203). He cited Ohio Revised Code §§ 2945.71 and 2945.72, focused his argument on what motions or delays were justified to toll the Ohio speedy-trial statute, *see id.*, and cited a single case, *State v. Spicer*, 1998 WL 226411 (Ohio Ct. App. May 8, 1998). *Spicer* involved an analysis

of what motions may toll the Ohio speedy-trial statute and contained no analysis of a federal constitutional speedy-trial claim. *Id.* at *1-2.[8] *Id.* Although Petitioner stated conclusively: "This is a violation of const[itutional] speedy trial right and statutory speedy trial right" (Ex. 47, Doc. 36-1 at 199), and that the appeal court "denied [him] equal protection of laws on appeal by not overturning conviction", *id.* at 203, merely using talismanic constitutional phrases is not sufficient to raise a federal constitutional issue, *see Slaughter v. Parker*, 450 F.3d 224, 236 (6th Cir. 2006). Petitioner did not rely on federal cases, rely on state cases employing federal constitutional analysis, phrase the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right, or allege facts well within the mainstream of constitutional law. *McMeans*, 228 F.3d at 681. Thus, Petitioner failed to "fairly present" his claim to the state courts in constitutional terms. *See Hyde v. Warden*, 2016 WL 1594596, *9-10 (S.D. Ohio) (speedy trial claim argued solely on state law grounds not fairly presented); *Green v. Clipper*, 2012 WL 8250157, at *14-15 (N.D. Ohio) ("Based on this record [where a petitioner argued the Ohio speedy trial statute was violated], it is not apparent that the state courts were provided notice that they were being called upon to answer the constitutional question now being presented."). As such, it is defaulted and may not be considered here.[9] To the extent Petitioner continues to argue the state violated Ohio's speedy trial law, such a claim fails to present a basis for relief. 28 U.S.C. § 2254(a); *Estelle*, 502 U.S. at 57-58, the undersigned therefore recommends Ground 1(C) be dismissed as procedurally defaulted and not cognizable.

---

8. Respondent also correctly points out that *Spicer* had been overturned by *State v. Brown*, 98 Ohio St. 3d 121, 123 (Ohio 2002), on grounds that demand for a bill of particulars is a tolling event pursuant to the Ohio speedy trial statute.

9. Petitioner has not asserted cause and prejudice to overcome this default.

Even if the Court were to find Petitioner's claim not defaulted, it is without merit. The

Ohio appellate court held, with regard to this claim[10]:

> {¶ 12} Appellant argues that the charges should have been dismissed on statutory
> speedy trial grounds. He filed a *pro se* speedy trial motion on June 22, 2012. The
> court denied the motion on October 11, 2012. Under R.C. 2945.71, a person
> charged with a felony shall be brought to trial within 270 days after arrest, and
> each day the defendant is held in jail in lieu of bail on the pending charge is
> counted as three days. Assuming *arguendo* that Appellant was held in jail in lieu
> of bond for the entire period of this case, the speedy trial clock would have
> expired on April 22, 2012. The statutory time period, though, may be extended by
> any delays necessitated by the actions of the defendant, by motions filed by the
> defendant, and by reasonable continuances granted other than by a defendant's
> motion, such as a *sua sponte* continuance granted by the court. R.C. 2945.72(E),
> (H). The record contains ten motions filed by Appellant or his counsel prior to
> June 22, 2012 that extended the speedy trial date, including discovery motions,
> motions to dismiss, motions to remove counsel, a motion for separate trial, a
> motion suggesting mental incompetency, and a motion to continue trial. In
> addition, the court had originally scheduled trial to begin on March 19, 2012, well
> within the speedy trial period, but due to a subsequent conflict with a previously
> scheduled trial, the court continued the trial to June 4, 2012. Appellant then filed a
> motion to further continue the trial and the motion was granted. The record
> demonstrates that Appellant's *pro se* motion to dismiss on speedy trial grounds
> was properly denied due to multiple continuances necessitated by Appellant's
> actions and by a reasonable continuance granted *sua sponte* by the court.

*Chappell*, 2014 WL 4402021, at *4.

The Sixth Amendment to the United States Constitution, made applicable to the States

through the Fourteenth Amendment, guarantees a defendant a "speedy and public trial." U.S.

---

10. The Sixth Circuit addressed Ohio's speedy trial statute in the context of federal habeas
review in *Brown v. Bobby,* 656 F.3d 325 (6th Cir. 2011). The court held AEDPA deference
applies even where the Ohio Court of Appeals does not specifically explain that it is ruling on
the merits of a Sixth Amendment speedy trial claim and, instead, bases its ruling on the Ohio
Speedy Trial statute. *See id.* The Sixth Circuit recognized that Ohio courts consider Ohio's
Speedy Trial statute to be co-extensive with the Sixth Amendment. *Id.* (stating that "Ohio's
procedure for determining whether a speedy trial violation has occurred, by applying the 270–
day limit, is not 'substantially different' from the *Barker* analysis, and can be seen as merely the
state's method of applying that Supreme Court precedent in a more structured manner."). "Thus,
any time an Ohio court reviews the implementation of a speedy trial statute, it is guided not just
by those provisions, but also by the dictates of the Sixth Amendment whether or not it expressly
applies the factors laid out in *Barker." Id.* at 331. Thus, the decision here is entitled to AEDPA
deference.

Const. Amend. VI; *Barker v. Wingo,* 407 U.S. 514, 530 (1972). The Supreme Court in *Barker* refused to establish a set number of days constituting a violation of the speedy trial right, stating that "such a result would require the Court to engage in legislative or rulemaking activity, rather than in the adjudicative process to which it should confine its efforts." *Barker,* 407 U.S. at 523. Instead, the Supreme Court established a balancing test in which the conduct of both the prosecution and the defendant are weighed to assess whether a speedy trial violation has occurred based on the length of delay between the date of indictment or arrest (whichever is earlier) and the date of trial. *Id.* at 530; *see also United States v. Marion,* 404 U.S. 307, 320–21 (1971). Four factors are to be considered under this balancing test: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right to a speedy trial; and (4) prejudice to the defendant. *Barker,* 407 U.S. at 530; *see also Doggett v. United States,* 505 U.S. 647, 651 (1992).

To trigger a speedy trial analysis under the four-factor balancing test, the defendant first must demonstrate that "the interval between accusation and trial has crossed the threshold dividing ordinary from 'presumptively prejudicial' delay." *Doggett,* 505 U.S. at 651–52; *Barker,* 407 U.S. at 530.[11] "The length of the delay is a threshold requirement. If the length of the delay is not 'uncommonly long,' then judicial examination ends." *Maples v. Stegall,* 427 F.3d 1020, 1025–26 (6th Cir. 2005) (quoting *Doggett,* 505 U.S. at 652). While delays approaching one year are considered presumptively prejudicial depending on the seriousness of the charge, *Doggett,* 505 U.S. at 652, n.1; *Maples,* 427 F.3d at 1026, those of a lesser duration are not per se excessive. *See, e.g.*, *United States v. Gardner*, 488 F.3d 700, 719 (6th Cir. 2007) (holding that

---

11. Under a constitutional speedy trial analysis, "[t]he length of delay is measured from the earlier of the date of indictment or arrest to the defendant's trial." *Maples v. Stegall*, 427 F.3d 1020, 1026 (6th Cir. 2005).

delay of "265 days, or approximately nine months" was not presumptively prejudicial in a case involving multiple defendants and pre-trial motions); *United States v. White,* 985 F.2d 271, 275 (6th Cir. 1993) (six-and-one-half month delay not presumptively prejudicial); *see also United States v. Howard,* 218 F.3d 556, 564 (6th Cir. 2000) (delay of five months not per se excessive); *Wilcher v. Rose,* 85 F.3d 630 (6th Cir. 1996) (unpublished), 1996 WL 262951, at *1 (ten-and-one-half months not presumptively prejudicial); *Hogan v. McBride,* 74 F.3d 144, 145 (7th Cir. 1996) (eight-month delay between charge and trial not presumptively prejudicial). In determining whether the delay is "uncommonly long" or "presumptively prejudicial", courts exclude the periods of delay attributable to the defendant. *See, e.g.*, *United States v. Howard*, 218 F.3d 556, 564 (6th Cir. 2000).

In the instant case, Petitioner was arrested on January 22, 2012, and trial began on October 15, 2012. *Chappell*, 2014 WL 4402021, at *1. He was thus incarcerated for a total of 266 days prior to the start of trial. Even assuming this is sufficient to overcome the presumptively prejudicial hurdle, a balancing of the remaining *Barker* factors shows no constitutional violation.

The second *Barker* factor—the reason for the delay—weighs in part against Petitioner. First, as the Ohio appellate court explained, the trial was originally scheduled within the statutory speedy time period, but was continued *sua sponte* by the court due to a conflict. Second, Petitioner himself, and counsel on his behalf, filed several motions that contributed to this delay. *See* Ex. 3, Doc. 36-1, at 12-15 (state's bill of particulars in response to Petitioner's request); Exs. 6-8, Doc. 36-1, at 19-24 (three *pro se* motions to remove counsel); Ex. 9, Doc. 36-1, at 26-27 (additional *pro se* motion to remove counsel); Ex. 11, Doc. 36-1, at 28 (Petitioner's motion,

through counsel, to continue trial so a hearing could be transcribed); Ex. 14, Doc. 36-1, at 33 (motion for competency evaluation).

As to the third *Barker* factor—the defendant's assertion of his speedy trial right— Petitioner did file a motion on June 22, 2012 asserting his speedy trial right (Ex. 18, Doc. 36-1, at 37-38), but the court found his statutory speedy trial rights were tolled by motions filed on his behalf (Ex. 22, Doc. 36-1, at 46).

Finally, Petitioner cannot satisfy the fourth Barker factor—prejudice. *Barker* describes three types of prejudice stemming from a speedy trial violation: 1) oppressive pretrial incarceration; 2) anxiety and concern; and 3) impairment of defense. 407 U.S. at 532. Petitioner does not allege any specific prejudice incurred by any alleged constitutional speedy trial violation.

A balancing of these factors clearly shows no constitutional speedy trial violation under *Barker*. The delay was not incredibly long, and it was due, in part, to a reasonable *sua sponte* continuance by the trial court, and by motions filed by Petitioner, and on Petitioner's behalf. And Petitioner has not shown prejudice. The Ohio appellate court's holding that "The record demonstrates that Appellant's *pro se* motion to dismiss on speedy trial grounds was properly denied due to multiple continuances necessitated by Appellant's actions and by a reasonable continuance granted *sua sponte* by the court", *Chappell*, 2014 WL 4402021, at *4, is therefore not an unreasonable determination of the facts in light of the evidence presented in the state court, nor is it contrary to or an unreasonable application of clearly established federal law.

Thus, even if Petitioner had not procedurally defaulted this claim, it fails on the merits. For this additional reason, the undersigned recommends Ground 1(C) be denied.

*Ground 1(D): Prosecuted for Charges Dismissed by Youngstown Municipal Court*

Petitioner argues in Ground 1(D) that the trial court erred in "allow[ing] him to be passed through the process of prosecution, stand trial, sentencing, and executed sentence for charges that were dismissed at a scheduled prelim[inary] hearing in Youngstown Municipal Court on 3-14-12." (Doc. 7, at 13). This argument pertains to Counts 1 and 2 of the indictment. *Id.* Again, Petitioner argues this violated his right to due process, fair trial, equal protection, double jeopardy, speedy trial, and prohibition against cruel and unusual punishment, as secured by the Fifth, Sixth, Fourteenth, and Eighth Amendments. *Id.* Respondent contends this claim is procedurally defaulted because it was not fairly presented to the Ohio courts, or, in the alternative, is without merit. (Doc. 36, at 17-18, 31-32, 50-51).

The Ohio appellate court addressed this claim, as Petitioner raised it there:

{¶ 10} Appellant argues that he could not have been convicted on count two of the indictment because the municipal court dismissed a similar count without prejudice prior to the case going to the grand jury. There is no error here because a dismissal without prejudice does not bar the state from initiating further criminal proceedings against a defendant. *State v. Annable,* 194 Ohio App.3d 336, 2011–Ohio–2029, 956 N.E.2d 341, ¶ 22 (8th Dist.); *City of Tipp City v. Brooks,* 2d Dist. No.2004 CA 7, 2005–Ohio–3174, ¶ 8.

*Chappell*, 2014 WL 4402021, at *3.

In his amended petition, Petitioner argues this violated his rights to due process, equal protection, speedy trial, and against double jeopardy. Any argument regarding double jeopardy or speedy trial in this regard is procedurally defaulted because it was not presented initially to the Ohio appellate court. In raising this claim about the preliminary hearing to the Ohio appellate court, Petitioner made no mention of double jeopardy or speedy trial. (Ex. 34, Doc. 36-1, at 90). Petitioner did raise a claim that this action violated his due process and equal protection rights, but did not then, nor does not now explain how those rights are at issue here. To the extent

26

Petitioner continues to argue this claim under Ohio law, it is non-cognizable in habeas review. *See Estelle*, 502 U.S. at 57-58. For these reasons, the undersigned recommends Ground 1(D) be dismissed as procedurally defaulted, and as raising a non-cognizable claim for relief.

*Ground 3(A): Ineffective Assistance of Trial Counsel*

Petitioner argues in Ground 3(A) that his trial counsel was ineffective for failing to raise the claims he now alleges in Grounds 1(A), 1(B), 1(C), and 1(D). (Doc. 7, at 15-16). He also contends counsel was ineffective because he did not assert self-defense as Petitioner requested, or move to admit evidence Petitioner asked him to admit. *Id.* He asserts this violates his rights to due process, effective assistance of counsel, and equal protection as protected by the Fifth, Sixth, and Fourteenth Amendments. *Id.* at 16. Respondent contends this ground is partially defaulted, and wholly meritless. (Doc. 36, at 55-60). The undersigned recommends Ground 3(A) be denied for the reasons discussed below.

To establish ineffective assistance of trial counsel, Petitioner must show: 1) his counsel's performance "fell below an objective standard of reasonableness", and 2) the deficient performance prejudiced the defense. *Strickland v. Washington,* 466 U.S. 668, 687–688 (1984). In assessing *Strickland*'s "objective standard of reasonableness prong, a court considers whether the attorney demonstrated reasonableness under prevailing professional norms." *Id.* at 688. "There are countless ways to provide effective assistance in any given case." *Id.* at 689. A court "will indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *O'Hara v. Wiggington*, 24 F.3d 823, 828 (6th Cir. 1994) (quoting *Strickland*, 466 U.S. at 689) (internal quotation marks omitted). A court "may not judge counsel's performance in hindsight, but within the context of the circumstances at the time of the alleged errors." *Schauer v. McKee*, 401 F. App'x 97, 100 (6th Cir. 2010) (internal quotation and

27

citation omitted). Counsel's reasonable trial decisions are permissible, "even if mistaken." *Moss v. Hofbauer*, 286 F.3d 851, 859 (6th Cir. 2002) (internal quotation and citation omitted). An attorney is not required to present meritless claims. *See Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013) (holding that "[i]f the underlying arguments are meritless . . . it could scarcely be ineffective assistance of counsel not to raise them . . . . [and o]mitting meritless arguments is neither professionally unreasonable nor prejudicial.") (citation omitted).

As to prejudice, the pertinent question is whether Petitioner can establish that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694. The prejudice component "focuses the question on whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). "A court need not assess counsel's deficient performance before considering prejudice, where the latter inquiry is an easier one." *Altman v. Winn*, 644 F. App'x 637, 641 (6th Cir. 2016) (citing *Strickland,* 466 U.S. at 697).

Petitioner claims counsel was ineffective in two ways: 1) not arguing what is now presented as Ground 1(D)—allowing Petitioner to stand trial on charges that were dismissed by the municipal court; and 2) not asserting self-defense as Petitioner requested.[12] He also argues the trial court erred in not granting his motions to remove counsel. Petitioner raised the legal and factual bases for these claims on direct appeal and thus they are not defaulted. *See* Ex. 34, Doc. 36-1, at 91 (to Ohio appellate court); Ex. 47, Doc. 36-1 at 198 (to Ohio Supreme Court).

---

12. Petitioner also refers the court to Grounds 1(A), 1(B) and 1(C) without elaboration. These claims are defaulted, as an ineffective assistance of counsel claim on this factual basis was not raised to the appellate court. *See McMeans*, 228 F.3d at 681.Moreover, as discussed above, an attorney is not required to present meritless claims. *Coley*, 706 F.3d at 752.

The Ohio appellate court interpreted Petitioner's claim and addressed it as follows:

{¶ 11} Appellant raises two issues related to ineffective assistance of counsel. Appellant argues that his counsel was ineffective because counsel allowed the court to convict him on a charge that was dismissed by the municipal court, and because the court did not allow him to have counsel of his own choosing. To prevail on a claim of ineffective assistance of counsel, Appellant must show not only that counsel's performance was deficient, but also that he was prejudiced by that deficiency. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Williams,* 99 Ohio St.3d 493, 2003–Ohio–4396, 794 N.E.2d 27, ¶ 107. "Deficient performance" means performance falling below an objective standard of reasonable representation. "Prejudice," in this context, means a reasonable probability that but for counsel's errors the result of the proceeding would have been different. *Strickland* at 687–688, 694. We have addressed the first issue and determined that the state was permitted to try Appellant on a charge that had once been dismissed without prejudice. Hence, there was no error for counsel to assert. As to the second matter, an indigent defendant only has "the right to professionally competent, effective representation, not the right to have a particular attorney represent him." *State v. Evans,* 153 Ohio App.3d 226, 2003–Ohio–3475, 792 N.E.2d 757, ¶ 30. Appellant's desire to choose his appointed counsel is not a viable claim of ineffective assistance of counsel.

*Chappell*, 2014 WL 4402021, at *3.

The first part of Petitioner's ineffective assistance claim is without merit. As the Ohio appellate court appropriately noted, counsel cannot be ineffective for failing to raise a meritless claim. As the appellate court found the underlying claim—that Petitioner was tried on charge that had been dismissed without prejudice—to be meritless, he cannot show prejudice from his counsel's failure to raise that claim. That is, he cannot show "there is a reasonable probability that, but for counsel's [allegedly] unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694; *Coley,* 706 F.3d at 752.

The second part of Petitioner's ineffective assistance claim is also without merit.[13] To assert a nondeadly-force affirmative defense under Ohio law, a defendant must prove:

_____

13. Respondent contends this part of Petitioner's ineffective assistance claim is procedurally defaulted, noting that the Ohio appellate court "interpreting [Petitioner's] narrative direct-appeal brief, did not determine this claim to have been raised." (Doc. 36, at 58). Petitioner did, however,

> by a preponderance of the evidence that (1) he was not at fault in creating the
> situation, (2) he reasonably believed that some force was necessary to defend
> himself against the imminent use of unlawful force, and (3) the force used was not
> likely to cause death or great bodily harm. *Columbus v. Dawson* (1986), 33 Ohio
> App.3d 141, 142, 514 N.E.2d 908.

*Cleveland v. Welms*, 169 Ohio App. 3d 600, 605 (Ohio Ct. App. 2006). The facts found by the appellate court here make clear Petitioner could not satisfy at least one of these elements. First, Petitioner was arrested after a domestic disturbance on suspicion of domestic violence. Thus, as to the first element, Petitioner could not show he was "not at fault in creating the situation" that led to the police arresting him. *See id.* Second, Petitioner was not defending himself against unlawful force, as the police officers had reason to take him into custody. It is unlikely Petitioner could have shown that he "reasonably believed that some force was necessary to defend himself against the imminent use of unlawful force." *See id.* Because Petitioner's argument that he needed to smear his feces in a police car and throw it at law enforcement officers in "self-defense" would have been unlikely to succeed, counsel's failure to raise such a defense cannot be said to fall below an objective standard of reasonableness. *See Strickland*, 466 U.S. at 694; *Coley*, 706 F.3d at 752.

Therefore, because both portions of Petitioner's ineffective assistance of counsel claim in Ground 3(A) are without merit, the undersigned recommends it be denied.

*Ground 4(D): Right to Self-Representation*

Petitioner argues in Ground 4(D) that he "clearly and unequivocally asserted [his] right to represent self by filing motions to remove counsel on 5-16-12, 5-22-12, 6-18-12, and at trial on

---

raise this factual basis for this claim as part of his ineffective assistance of counsel claim to both the Ohio Court of Appeals and the Ohio Supreme Court, stating "Second, Counsel did not get my permission to take the type of defense he took. I asked him to take another defense to the charges (self defense) and I produced documents that I asked him to have admitted into evidence to support my defense" (Ex. 34, Doc. 36-1, at 91), and "My counsel was ineffective because he didn't take the defense I asked him to which was self defense. . . " (Ex. 45, Doc. 36-1, at 168); *see also* Ex. 47, Doc. 36-1, at 198 (revised memorandum in support of jurisdiction).

pg. 113-117 of transcript due to my attorney['s] disregard of my rights and his disregard for the defense I wanted to take but the court made me keep him." (Doc. 7, at 17). Petitioner attached to the Amended Petition pages 113-17, and 133-34 of the trial transcript. (Doc. 7-1, at 5-8). In support, Petitioner cites *Faretta v. California*, 422 U.S. 806, 807 (1975). Respondent contends that "[a] motion to remove counsel is not a clear and unequivocal assertion of the right to self-representation" and that "[t]he Ohio Court of Appeals identified the correct standard of federal law (while citing the equivalent state case) and applied it reasonably to the facts on the record." (Doc. 36, at 63).

> The appellate court found, with respect to Petitioner's self-representation claim:
>
> {¶ 16} Appellant's final argument is that the trial judge erred in not allowing him to represent himself at trial. Appellant contends that it should have been self-evident that he needed to represent himself because his counsel was ineffective. Whether or not Appellant's counsel was ineffective, the right to self-representation must be clearly and unequivocally asserted in a timely manner and does not attach until asserted. *State v. Cassano,* 96 Ohio St.3d 94, 2002–Ohio–3751, 772 N.E.2d 81, ¶ 38. The record contains no evidence that Appellant asserted his right to self-representation.

*Chappell*, 2014 WL 4402010, at *5. On direct appeal, Petitioner argued he was denied his right to represent himself, stating:

> Court erred in not letting me represent self which is my 6th amendment right, *Faretta v. Cal.*, 422 U.S. 806 (1975). The omissions and conduct I brought to the court attention make it apparent that I did not have effective assistance of counsel and my counsel conduct jeopardized my right to fair trial. Also at preliminary hearings I made it clear to the court that my counsel and me were not on the same page and he was hijacking my trial and doing stuff without my permission. His actions prejudiced my defense and prevented me from receiving a fair trial which violated my right to fair trial, due process, effective assistance of counsel, and equal protection of the laws which are protected by the 5th, 6th, and 14th amendments of the U.S. Constitution.

(Ex. 34, Doc. 36-1, at 93). He also made a similar argument to the Ohio Supreme Court in his revised memorandum in support of jurisdiction:

> I had a right to represent myself at trial pursuant to *Faretta v. Cal.*, 422 U.S. 806 (1975). I told the trial court this immediately before trial but the court didn't let me represent myself. It is all in the transcript records. All proceedings are recorded Crim. R. 22. I clearly and unequivocally asserted my right to self representation. Just check the transcript.

(Ex. 47, Doc. 36-1, at 199).

The Sixth Amendment provides that a criminal defendant shall have the right to assistance of counsel for his defense. U.S. Const. Amend. VI. In *Faretta*, the Supreme Court recognized a corollary constitutional right "to proceed without counsel when [a defendant] voluntarily and intelligently elects to do so." 422 U.S. 806, 807 (1975). However, "[a]s the *Faretta* opinion recognized, the right to self-representation is not absolute." *Martinez v. Ct. of Appeal of Cal.*, 528 U.S. 152, 161 (2000). A defendant may forfeit his self-representation right if he does not assert it "in a timely manner." *Id.* at 162. Such a limit reflects that "[e]ven at the trial level . . . the government's interest in ensuring the integrity and efficiency of the trial at times outweighs the defendant's interest in acting as his own lawyer." *Id.*

A defendant's decision to represent himself—and thereby waive counsel—must be knowingly and voluntarily made. *Faretta*, 422 U.S. at 835. Because the dangers and disadvantages of self-representation during trial are so substantial, an accused will not be deemed to have validly waived his Sixth Amendment right to counsel unless the court has made "searching or formal inquiry" to ensure that his waiver is knowing, intelligent, and voluntary." *Patterson v. Illinois*, 487 U.S. 285, 292 & n.4 (1988). "*Faretta* procedures" inquiring into a defendant's waiver "are only required when a defendant has clearly and unequivocally asserted his right to proceed pro se." *United States v. Cromer*, 389 F.3d 662, 682 (6th Cir. 2004).

Courts look to the circumstances surrounding the request to represent oneself in determining whether that request is clear and unequivocal. In cases where a defendant is

expressing frustration about not being appointed substitute counsel courts have held that an off the cuff remark about representing oneself is not clear and unequivocal. *See Reese v. Nix*, 942 F.2d 1276, 1281 (8th Cir. 1991) (finding, in part, that a request for self-representation was not clear and unequivocal where a defendant "was merely expressing his frustration" at not being appointed a different attorney); *United States v. Light*, 406 F.3d 995, 999 (8th Cir. 2005) (finding no clear and unequivocal request when the defendant stated: "Well, I don't want no counsel then" after the trial court denied his motion for substitute counsel); *United States v. Manthey*, 92 F. App'x 291, 295 (6th Cir. 2004) (holding that a "single, off-the-cuff remark [that defendant wanted to represent himself] as the clear and unequivocal request to proceed pro se required by *Faretta v. California*" where that comment was made after the court appointed new counsel).

Asking questions about the right to self-representation, in context, has also often been held to be insufficient to trigger the right. *See United States v. Pena*, 279 F. App'x 702, 706-07 (10th Cir. 2008) (finding no clear and unequivocal request when defendant asked "Can I represent myself?" in the middle of a colloquy with the judge primarily concerning his dissatisfaction with current counsel); *Light*, 406 F.3d at 998 (holding no unequivocal request for self-representation where defendant asked, "What's the rule on representing yourself?" in context of warnings to defendant about his behavior); *Burton v. Collins*, 937 F.2d 131, 133 (5th Cir. 1991) (holding that asking "May I represent myself?" was not a clear and unequivocal request in the circumstances). Similarly, requests to ask questions or "speak like everybody else" are not clear and unequivocal assertions of the right to self-representation. *McGhee v. Dittman*, 794 F.3d 761, 771 (7th Cir. 1995).

Expressing disagreements with counsel over trial strategy are also not alone enough to show a request for self-representation. *See United States v. Callwood*, 66 F.3d 1110, 1114 (10th

33

Cir. 1995) (finding no unequivocal request for self-representation where a defendant complained during trial that his counsel was not asking witnesses the questions that defendant wanted asked, informed the court he "would prefer for [counsel] not to represent [defendant] or at least the right to question the [witness himself]; and stated several times that he did not believe he was receiving "proper representation" but never made any other statement regarding his desire for self-representation); *Moreno v. Estelle*, 717 F.2d 171, 174-75 (5th Cir. 1983) (holding that defendant did not waive right to counsel by telling court he wished his attorney to withdraw because "I feel she isn't helping me," "I can't get her to do anything," and "I don't want her.").

Finally, the right to self-representation may be waived if the defendant engages in conduct indicating that he has either abandoned his request to self-represent or is ambivalent with respect to self-representation. *Wilson v. Walker*, 204 F.3d 33, 37 (2d Cir. 2000) ("Once asserted . . . the right to self-representation may be waived through conduct indicating that one is vacillating on the issue or has abandoned one's request altogether.").

Preliminarily, the undersigned finds Petitioner has overcome the presumption of correctness afforded state court factual determinations regarding the appellate court's statement that "The record contains no evidence that Appellant asserted his right to self-representation." *See* 28 U.S.C. § 2254(e)(1); *Moore*, 708 F.3d at 775. Petitioner points specifically to the following exchange from the trial transcript (during voir dire):

**(WHEREUPON, the defendant and defense counsel were conferring.)**

**THE COURT:** Hold it down.

**[DEFENSE COUNSEL]:** Your Honor, can I have a moment?

**THE COURT:** With him?

**[DEFENSE COUNSEL]:** Yes.

34

> **THE COURT:** Yeah, go ahead.
>
> **(WHEREUPON, the defendant and defense counsel continued conferring, after which the proceedings continued as follows:)**
>
> **THE COURT:** If you're going to talk, talk quietly.
>
> **DEFENDANT:** The judge is saying I'm fidgeting. I'm just acting on what's presented. Can you bench my attorney under my Sixth Amendment right? I can represent myself.
>
> **THE COURT:** Hold your voice down. We will discuss this later.

(Tr. 116-17, Doc. 65-1). He also attaches trial transcript pages including an exchange from a break during voir dire shortly after the previous exchange, which includes the statement: "Well, it say right here, this say you can represent yourself under your own Sixth Amendment. But it also say if the court find me – I read that the court ruled – the higher court ruled if I want to do it, it's my choice, but he can sit back and just basically referee me. That was a higher court that ruled that." (Tr. 133). These trial transcripts contradict the appellate court's short finding that "The record contains no evidence that Appellant asserted his right to self-representation." *Chappell*, 2014 WL 4402010, at *5.

However, although Petitioner certainly raised the possibility of self-representation to the trial court, in context, he did not assert his right to do so clearly and unequivocally.[14] At the beginning of voir dire, trial counsel introduced himself to potential jurors. Following this, Petitioner also introduced himself: "I wanted to introduce myself, too. I'm Ronald. I'm Ronald. And this is my assistant, Edward [defense counsel]. And he's a good assistant and—" (Tr. 14). Voir dire then continues uninterrupted for some time. (Tr. 15-116). Then, the exchange quoted above wherein Petitioner states "Can you bench my attorney under my Sixth Amendment right? I

---

14. Perhaps this is what the Ohio appellate court intended to say – that "the record contains no evidence that Appellant *clearly and unequivocally* asserted his right to self-representation" rather than "the record contains no evidence that Appellant asserted his right to self-representation."

can represent myself." occurred, with voir dire continuing after. (Tr. 116-17). A short while later, during a break from voir dire, Petitioner asked to address the court. (Tr. 128). He asked questions about the proceeding, such as: "why do they [the state] get two attorneys and I only get one?" (Tr. 129). The court explained: "Well, that's up to them. They can have three or four if they want." *Id.* Petitioner responded: "I didn't know that. I wanted to know if I could be a more active role. Because I didn't understand about this." *Id*. The court and Petitioner then engaged in a discussion about what constitutes removal of a juror for cause versus a peremptory strike (Tr. 129-30) and the exchange continued:

> **THE DEFENDANT:** I wanted to know if I could have – if I could have more of an active role in this. Like I don't feel that this is right, Your Honor, because I shouldn't even be in here. I shouldn't even be standing trial.
>
> **THE COURT:** All right.
>
> **THE DEFENDANT:** I should be at home, Your Honor. At home. I want to know if I can go home.
>
> **THE COURT:** You got a good lawyer, he's doing a good job. And your active role, your participation, will be involved in writing him notes. I don't want you talking loud like you did.
>
> **THE DEFENDANT:** I had to get his attention.
>
> **THE COURT:** You write him a note when you have to.
>
> **THE DEFENDANT:** This is serious.
>
> **THE COURT:** And if you decide that you want to testify, that's going to be your active role.
>
> **THE DEFENDANT:** That's it? I can't – I can't like question them and stuff?
>
> **THE COURT:** No, you can't question any of them.
>
> **THE DEFENDANT:** What about them? You know how they get up here and they ask some people, like you know, what you be asking them, can I do that? You know how they drop the pens? I can't do like that?
>
> **THE COURT:** No, you can't do that. There's certain rules that everybody has to follow, including you.

**THE DEFENDANT:** Okay. Now he explained to me one time, he said – or somebody explained to me that I could – he could sit back and basically like oversee me.

**THE COURT:** That's up to the discretion of the court, and right now he's doing a good job for you.

**THE DEFENDANT:** Okay. I want to know if he can sit back and oversee me and then when I need him for something I just call him up and I go sit down.

**THE COURT:** You write him a note or you whisper to him, but I don't want any more of this loud talking.

**THE DEFENDANT:** I can't question people, your Honor?

**THE COURT:** No.

**THE DEFENDANT:** What about – okay, what about further into it and stuff, like after everybody is up there and after they come bring the witnesses and everything, can I question them or anything?

**THE COURT:** No. He's your lawyer. He's doing an excellent job.

**THE DEFENDANT:** Well, it say right here, this say you can represent yourself under your own Sixth Amendment. But it also say if the court find me – I read that the court ruled – the higher court ruled if I want to do it, it's my choice, but he can sit back and just basically referee me. That was a higher court that ruled that.

**[DEFENSE COUNSEL]:** Your Honor, he's referencing a letter from the University of Akron law students who came to visit him.

**THE DEFENDANT:** A higher court. I could tell you the court – the case. It was in U.S. Court, a higher federal judge ruled that if you feel that I am incompetent and there may be some things you could tell him to sit or stand on my basis.

**THE COURT:** I don't feel you're incompetent. Three other people have said you're not incompetent either.

**THE DEFENDANT:** Okay. Well, can I – okay. And I ain't got no money on my books. Can I get – can you order him to put some money on my books? Like $20, $30?

**THE COURT:** At the jail?

**THE DEFENDANT:** Yeah.

**THE COURT:** Yeah, you gotta talk to him. How much you talking about?

**[DEFENSE COUNSEL]:** I'll see what I can come up with, Judge.

**THE DEFENDANT:** Thirty dollars?

**[DEFENSE COUNSEL]:** We'll see. I'll get you more actively involved tomorrow. Thank you, Your Honor.

**THE COURT:** Okay.

(Tr. 130-34).

These exchanges, taken in context, do not show Petitioner clearly and unequivocally asserted his right to self-representation. A review of the full trial transcript in this case illustrates that Petitioner was at times frustrated with, or disagreed with his counsel's decisions. However, at other times, he appeared to be working *with* counsel to present his defense. For example, during voir dire, when introducing himself, he referred to trial counsel as "a good assistant." (Tr. 14). Later in voir dire, Petitioner stated (seemingly to counsel, but loud enough that the court reporter recorded it): "This is the last one. Let me make it good. We got to do it right" regarding a peremptory juror challenge. (Tr. 156). Additionally, when Petitioner took the stand (against counsel's advice), he initially began to speak, but then permitted trial counsel to question him:

**THE COURT:** And you don't have to testify. That's up to you.

**DEFENDANT WITNESS:** Yeah. This is the only way I will get my voice heard, because I am seeking the sure administration of justice for all. And by me coming up here, this is the only way that I can get my voice heard so justice is served.

**THE COURT:** Get to the point of your testimony.

**DEFENDANT WITNESS:** My testimony is basically ---

**[DEFENSE COUNSEL]:** Ron, let me ask you questions, and you get me answer[s], all right? Fair enough?

**DEFENDANT WITNESS:** Yeah.

(Tr. 370-71).

Here, Petitioner first blurted out his statement "Can you bench my attorney under my Sixth Amendment right? I can represent myself." (Tr. 116-17) in the midst of voir dire while he was conferring with counsel and the court had cautioned him to keep him voice down. Shortly thereafter, during a break in proceedings, the court permitted Petitioner to directly address the court. This exchange shows Petitioner asking questions about the proceedings—how peremptory strikes versus strikes for cause work, how many lawyers each side is permitted to have, and whether he is permitted to ask questions. This later exchange devolved into a discussion of competency and inadequate jail funds. Additionally, during this second exchange, although Petitioner mentioned the right to self-representation, he appeared to be proposing "hybrid representation" where he and his attorney would both participate in the proceedings. "It is well settled there is no constitutional right to hybrid representation." *Cromer*, 389 F.3d at 681 n.12. As one court concisely put it, "[t]he fact that there is more than one reasonable interpretation of the dialog between [a defendant] and the trial judge is, in a sense, the best evidence that [a defendant] did not clearly and unequivocally assert his right to self-representation." *Burton*, 937 F.2d at 134. The undersigned finds, in the circumstances, no clear and unequivocal expression of the desire for self-representation.

Moreover, although Petitioner did at times express frustration with his lawyer (and a desire to ask questions) later in the proceedings, *see, e.g.*, Tr. 240, 245, 276-78, Petitioner did not specifically object to the presence of counsel, nor did he renew any request to proceed *pro se*. *See Jackson v. Ylst*, 921 F.2d 882, 889 (9th Cir. 1990); *Reese*, 942 F.2d at 1281. This conduct, in objecting to his attorney's strategy at times, but seemingly cooperating at others, is conduct "indicating that one is vacillating on the issue [of self-representation] or has abandoned one's

request altogether." *Wilson*, 204 F.3d at 37. Thus, even if Petitioner earlier attempted to assert his right to represent himself, his later conduct waived such an assertion.

Therefore, the appellate court's conclusion that Petitioner's self-representation right was not violated is not contrary to, or an unreasonable application of, federal constitutional law. The appellate court correctly identified the law (citing a state case applying *Faretta* and analyzing what constitutes "clear and unequivocal"). Although the appellate court's factual determination was not correct, its legal conclusion is still entitled to AEDPA deference. *See Cullen v. Pinholster*, 563 U.S. 170, 187-88 (2011); *Hawkins v. Coyle*, 547 F.3d 540, 546 (6th Cir. 2005).. As the Supreme Court stated in *Harrington v. Richter*, "[s]ection 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems.'" 562 U.S. at 103 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979)). The undersigned can find no such "extreme malfunction" here. The "state court's ruling on the claim" was not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*

## CONCLUSION AND RECOMMENDATION

Following review, and for the reasons stated above, the undersigned recommends the Amended Petition be denied in its entirety.

s/James R. Knepp II
United States Magistrate Judge

*ANY OBJECTIONS* to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).